IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

PATRICK WILLIAMS,

            Plaintiff,

      vs.                           **Case No. 09-4105-RDR**

GOODYEAR TIRE AND RUBBER
COMPANY,

            Defendant.

---

**<u>MEMORANDUM AND ORDER</u>**

This is an employment discrimination action brought by Patrick Williams against his former employer, The Goodyear Tire and Rubber Company (Goodyear).  Williams asserts a claim under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112 <u>et</u> <u>seq.</u>, and a state retaliatory discharge claim.  This matter is presently before the court upon Goodyear's motion for summary judgment.

I.

Williams contends that he was fired from him his employment with Goodyear because Goodyear regarded him as disabled under the ADA.  He suggests that Goodyear terminated him when it discovered that he had filed prior workers' compensation claims, received disability ratings and had been paid compensation.  He further contends, under Kansas law, that he was terminated by Goodyear because of his history of workers' compensation claims and benefits received under Kansas law.

In the instant motion, Goodyear argues that it is entitled to

summary judgment on both claims asserted by Williams.  Goodyear initially contends that Williams has not established a prima facie case under the ADA because he has not demonstrated that he was regarded as a disabled person by Goodyear.  Goodyear next argues that, even if Williams can establish a prima facie case of discrimination, summary judgment is proper under the ADA because he has not presented any competent evidence that Goodyear terminated his employment because he was regarded as disabled.  Goodyear asserts that the facts in the record show that Williams was terminated due to his intentional failure to disclose during the employment process several previous employers and past head and knee injuries.  For this reason, Goodyear also contends that it is entitled to summary judgment on Williams' supplemental state law claim.  In the alternative, Goodyear contends that the court should decline to exercise supplemental jurisdiction over Williams' state law claim if summary judgment is granted to it on the ADA claim.

II.

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998) (citing Matsushita Elec. Indus.

2

Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."  Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."  Id. (citing Anderson, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  Id. at 670-71.  In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.  Id. at 671 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 256; see Adler, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment).  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.  Anderson, 477 U.S. at 256. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a

rational trier of fact could find for the nonmovant." <u>Adler</u>, 144
F.3d at 671.  "To accomplish this, the facts must be identified by
reference to affidavits, deposition transcripts, or specific
exhibits incorporated therein." <u>Id</u>.

Finally, the court notes that summary judgment is not a
"disfavored procedural shortcut;" rather, it is an important
procedure "designed to secure the just, speedy and inexpensive
determination of every action." <u>Celotex</u>, 477 U.S. at 327 (quoting
Fed.R.Civ.P. 1).

III.

The following facts are not controverted in the record or are
viewed in the light most favorable to Williams.  On May 27, 2008,
Williams completed an application for employment at Goodyear.  The
employment application provided:  "I understand that my
misrepresentation of the information provided herein or on any
other documentation provided to The Goodyear Tire & Rubber Company
Inc. shall constitute just cause for termination of the interview
or, if applicable, continued employment without prior notice."
Williams signed his name directly below this statement,
acknowledging that he read and understood this provision.

The employment application required a list of all previous
employers:  "ACCOUNT FOR ALL YOUR TIME – REGARDLESS OF HOW SPENT
(INCLUDING MILITARY)."  Williams identified only three employers:
(1) Studer Truck Lines (2007 to present); (2) Mid Cities (December

2006 to July 2007); and Ranger Trucking (March 1999 to November 2004). Williams has stated that he was told by a Goodyear employee to write down only the longest position with an employer if two jobs overlapped.

Williams' employment history from 1996 to the time of the application was as follows: Shirley Construction (1996 or 1997); Suhler Truck Line (several months in 1997); Alamo Group (April 1997 to April 1998); Larry Meier Trucking (April 1998 to March 1999); All Freight Trucking (January 2002 to April 2002); Mt. Bethel Trucking (July 2002 to December 2002); Club Security and Investigation (2006); Ranger Trucking (March 1999 to present); Mid Cities (December 2006 to July 2007); and Studer Truck Lines (September 2007 to July 2008). Williams had also previously been employed at Osborne, Sindaco, Aljon United and some fast food restaurants.

In the employment application, Williams failed to identify the two prior employers at which he had suffered on-the-job injuries which resulted in missed work and disability ratings: Suhler Trucking and All Freight Trucking. The application also failed to list several other employers, including Shirley Construction, Aljon, Alamo and Club Security.

As part of the employment process, Williams was required to fill out a medical questionnaire. Williams did so on June 17, 2008 after he received a conditional offer of employment. In connection

5

with the medical questionnaire, Goodyear asked Williams to consent

to a release of his workers' compensation records.   Williams

consented to the release of his workers' compensation records on

June 17, 2008.  Goodyear obtained the records on June 18, 2008.

The medical questionnaire inquired:  "DO YOU NOW HAVE OR HAVE

YOU EVER HAD" the following:

> No.  2 "Head injury--concussion, skull fracture,
> etc.?"  Williams originally checked the "No" box, but
> then crossed that out and checked the "Yes" box.   He
> wrote off to the side in the area marked "GIVE DATE AND
> DETAILS FOR ALL 'YES' ANSWERS" the following:  "2. Hit
> with door--2001."
> No.  3 "Headaches?--If yes, indicate frequency,
> severity?"  Williams checked the "No" box.
> No. 11 "Disorder of the musculo-skeletal system--
> back trouble, knee trouble, painful or swollen joints,
> bone  fracture,  gout,  arthritis,  amputation,  etc.?"
> Williams checked the "No" box.
> No. 21 "Have you ever had any surgical operations?"
> Williams checked the "Yes" box.   He wrote "21. Gall
> Bladder, scope of knee, shoulder."   The other comments
> next to these notes on the questionnaire were made by the
> doctor who performed the medical examination, Dr. Kim
> Davies.   Dr. Davies wrote "chole," "2004," "1997," and
> "acromiopasty release." Dr. Davies did not make comments
> about the knee scope because Williams had indicated that
> the scope was minor and/or he was not experiencing any
> current problems with this knee.
> No. 26 "Have you ever been unable to do or hold a
> job because of: Sensitivity to chemicals?  Inability to
> perform certain motions?   Inability to assume certain
> positions? Other physical or mental reasons?"  Williams
> checked the "No" box after sensitivity to chemicals and
> failed to check the other three boxes.
> No. 27 "Have you ever been absent from work due to
> an injury or illness related to your work for a previous
> employer?"  Williams checked the "Yes" box.  He wrote the
> following: "27 When hit with door, 2001; bladder-3/2008."

Dr. Davies conducted the medical examination.  Dr. Davies had

a copy of the questionnaire during the examination and went over

the questionnaire with Williams to clarify answers. The examination included a physical, a hearing test and an eye test. Williams also took a pulmonary function test, urine screen and hair test.

On the hearing evaluation form, Williams indicated that he had been hit in the head with a trailer door. Dr. Davies wrote the word, "concussion," which was in relation to Williams being hit in the head with the door. Dr. Davies reported that Williams provided her that information. She did not write any further comments. She indicated that she would have noted any other symptoms if Williams had indicated that he suffered from them. Dr. Davies could have ordered an extensive neurological exam if she believed the concussion was serious or if she had reason to suspect that Williams was not being forthcoming about his symptoms. Dr. Davies did not have Williams' past workers' compensation records when she performed his medical examination. Williams spoke to Dr. Davies about his head and knee injuries, i.e., the nature of the incidents and the issues he had concerning the injuries, during his pre-placement testing. Dr. Davies cleared Williams without any restrictions.

Goodyear has an on-site occupational medical unit staffed by nurses on a 24/7 basis. The medical unit requests workers' compensation records on all Goodyear new hires. If inconsistencies are discovered between the information provided by the employee and

those records, the medical unit alerts Cindy Nace, Workers' Compensation and Employee Benefits Manager, who then investigates further.

Williams' workers' compensation records showed that he had worked at Sonic, Shirley Construction, Aljon, Suhler Trucking, Alamo, All Freight, Club Security, and Mid Cities, all employers which Williams failed to disclose in his employment application. The records further revealed that Williams had sustained two workplace injuries that resulted in time off from work. The records showed that Williams had injured his knee at Suhler Trucking in 1997 and suffered a head injury at All Freight in 2002, both of which resulted in the receipt of temporary total benefits and lump sum settlements.

A nurse informed Nace that Williams' medical questionnaire was inconsistent with the workers' compensation records that Goodyear had received. Nace reviewed Williams' medical questionnaire and his workers' compensation documents and determined that the information contained in Williams' medical questionnaire failed to match up to the records received from the Kansas Division of Workers' Compensation.

At her deposition, Nace identified specific inconsistencies. First, on the medical questionnaire, Williams checked the "No" box on No. 11 (swollen joint, knee trouble), but then indicated in response to a different question that he had a scope of his knee.

Second, on the medical questionnaire, Williams checked the "No" box for No. 2 (head injury, concussions, skull fractures) and then changed it and marked the "Yes" box.  The workers' compensation records showed that Williams had suffered a head injury and there was some permanency related to that injury, which was not identified by Williams.  Third, the workers' compensation records showed that Williams had suffered a knee injury and there was some permanency related to that injury, which was not identified by Williams in No. 11 on the medical questionnaire.  Fourth, on the medical questionnaire, Williams checked the "Yes" box for No. 27 (whether he had missed work due to an injury or illness related to his work at a previous employer), but identified only that he had been hit with a door in 2001.  The workers' compensation records showed that Williams was absent from work for an extended period of time due to the knee injury.  Williams' knee surgery and extended absence from work were not disclosed on the medical questionnaire at No. 11.

On July 3, 2008, Nace sent an e-mail to Heather McMurphey, Human Resource Generalist, stating, "I need to speak to you ASAP about Patrick Williams and some info from his medical exam period.  He is to start work 7/7/08."  Nace sent the e-mail because Williams had failed to disclose information on his medical questionnaire.  According to Nace, she believed "there was some -- there may be additional information that ha[d] not been disclosed."

Williams began general training at Goodyear on July 7, 2008. Williams had not been assigned a specific job when he began employment, but was told at some point that he was going to be assigned to clean-up relief. A few days after he began training at Goodyear, Williams provided a resumé to the Plant Manager in order to be considered for participation in training for skilled trades and craft jobs. On his resume, Williams identified the following work history: Studer (September 2007-Current); Mid Cities (12/06-7/07); Ranger Trucking (01/03-11/04); All Freight Trucking 01/02-04/02); and Ranger Trucking (03/99-01/02). His resume failed to disclose employment at Suhler Trucking where he sustained the knee injury or Club Security where he suffered a shoulder injury. Charles Hollis, Human Resources Manager for the Topeka facility, had not seen a copy of Williams' resumé at the time of termination.

Nace reported the inconsistencies she had discovered to Hollis and Tony McCauley, Human Resources Services Manager. Hollis recalled that Nace showed him Williams' employment application and medical questionnaire. Hollis also recalled that Nace "found some things that didn't look quite right . . . maybe had falsified or left some information off his application." He and Nace spoke about Williams' knee and head injuries, and about the workers' compensation records. Hollis instructed Nace to schedule a meeting with Williams to investigate the inconsistencies she had discovered and then report back to him after the meeting.

On July 11, 2008, Nace met with Williams.  Connie Fulton,
Human Resource Specialist, was also present during the meeting.
Nace inquired about Williams' head injury and the resulting
workers' compensation claim and settlement.  She showed him the
workers' compensation docket sheet relating to this injury.
Williams was unable to recall if Nace inquired about absences
relating to this injury.  Nace testified that Williams informed her
that he had missed only a short amount of work due to the injury,
which contradicted the workers' compensation records.  Williams was
unable to recall how he responded to Nace's questions about the
basis for the workers' compensation settlement.  According to Nace,
Williams denied any residual effects or that any physician had
given him a rating for any permanent residual effect or impairment.
Williams was unable to recall if Nace asked why he had checked the
"No" box for No. 26 (ever unable to do or hold a job because of .
. . physical reasons).  When questioned at his deposition about No.
26, Williams testified that apart from the absences relating to his
knee and head injuries, he had never been told he could not work.
Because Williams had told Nace that he had been told by All Freight
that he could not return to work driving a truck there based upon
what the doctor had said, she believed Williams should have checked
the "Yes" box for No. 26.  Nace stated that the workers'
compensation documents showed that Williams was given a permanent
impairment rating.  In Nace's opinion, Williams should have

11

disclosed the information about the rating on his medical questionnaire. Williams discussed his knee injury with Nace. Williams recalled only that Nace had inquired about his workers' compensation claim and that she had showed him the workers' compensation docket sheet relating to that injury. Nace recalled that Williams told her that the injury was personal and not work-related, which is why he had not disclosed the injury, and that when she confronted him about his absences and workers' compensation claim/settlement with Suhler Trucking, Williams failed to respond.

Fulton left the meeting believing that Williams had not been truthful. Fulton said that Williams' story shifted and his answers changed throughout the meeting. According to Fulton, Williams would answer one way and then change his answer after Nace challenged him with supporting documentation. One issue that stuck out in Fulton's mind was that Williams denied being hurt at work, but later remembered that he had been hit in the head with a garage door when Nace mentioned the incident. Upon hearing his response, Fulton recalled, "I'm thinking, okay, if you get hit by a garage door that's something I don't think you'll forget." Fulton later conveyed her conclusion about Williams' untruthfulness to Hollis.

Nace met with Hollis after her meeting with Williams and reported the following: (1) that Williams had filled out and understood the medical questionnaire; (2) that Williams initially

12

denied a workers' compensation settlement concerning head and knee injuries; (3) that Williams denied any permanent impairments or disabilities; (4) that Williams had received a permanent impairment rating on his head injury pursuant to his workers' compensation claim/settlement; (5) that Williams admitted that he did not return to work after his head injury due to residual effects; (6) that Williams indicated he had not disclosed his knee injury because it was not a work-related injury; and (7) that Williams was evasive with some of his answers. Both McCauley and Fulton were present during the meeting. Hollis recollected that he and Nace also discussed the fact that Williams had not identified all of his employers on his employment application, significantly those where he had suffered on-the-job injuries. When Hollis asked Nace, McCauley and Fulton their opinions about Williams, each indicated a belief that Williams had intentionally omitted information. Fulton confirmed Nace's summary of the meeting to Hollis--that Williams "didn't have his story straight or we caught him or she caught him in several lies." After listening to Nace and Fulton, Hollis made the decision to terminate Williams' employment. The discrepancies, the failure to disclose, and the lack of candor in regard to the head and knee injuries were factors in his decision to discharge Williams. Hollis also discovered that Williams had failed to identify all of his prior employers on his employment application. The key element for Hollis was that

13

Williams omitted All Freight and Suhler Trucking from the list of prior employers on his employment application.  Hollis testified, "And I think kind of the telling part for me was that the two jobs that were left off were the two where Workers' Comp injuries occurred.  They were specifically the ones that were left out." Neither Nace nor Hollis spoke to Dr. Davies about Williams.

When questioned at his deposition why he failed to identify All Freight or Suhler on his employment application, Williams testified that the application "asked only for three to five years of employment history."  Upon review of his employment application, however, Williams conceded that it did not have a time limit or a limit as to the number of prior employers.

On July 11, 2008, McCauley met with Williams and provided him a letter that stated, "This letter is to confirm your probationary release from employment for falsifying pre-employment medical information."

IV.

The ADA prohibits employers from discriminating on the basis of disability.  42 U.S.C. § 12112(a).  The elements of a prima facie case of ADA discrimination are:  (1) plaintiff is a disabled person as defined by the ADA; (2) plaintiff is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) plaintiff suffered discrimination by an employer or prospective employer.  Zwygart v.

14

<u>Bd. of County Comm'rs of Jefferson County, Kan.</u>, 483 F.3d 1086, 1090 (10th Cir. 2007).  The statute defines disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2).  "Major life activities include such functions as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, sleeping, sitting, standing, lifting, reaching, and working."  <u>Rakity v. Dillon Cos.</u>, 302 F.3d 1152, 1158 (10th Cir. 2002) (quoting <u>Doyal v. Oklahoma Heart, Inc.</u>, 213 F.3d 4982, 495-96 (10th Cir. 2000)).

A person is "regarded as" disabled when (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." <u>Johnson v. Weld County, Colo.</u>, 594 F.3d 1202, 1219 (10th Cir. 2010) (brackets and internal quotation marks omitted).  In either case, the focus of the court is on an employer's subjective state of mind.  <u>Justice v. Crown Cork and Seal Co., Inc.</u>, 527 F.3d 1080, 1086 (10th Cir. 2008).  The question for the court is:  "[D]id the employer mistakenly believe that the plaintiff was substantially limited in performing a major life activity?"  <u>Id</u>.  Working is a "major life activity." 29 C.F.R. § 1630.2(i); <u>EEOC v. Heartway</u>

15

Corp., 466 F.3d 1156, 1162 (10th Cir. 2006).  To prevail on a claim
that his employer regarded him as substantially limited in the
major life activity of working, a plaintiff must demonstrate that
his employer regarded him as significantly restricted in performing
either (1) a class of jobs; or (2) a broad range of jobs in various
classes.  See Heartway, 466 F.3d at 1163 (holding that "there must
be sufficient evidence that the employer subjectively believed the
employee to be significantly restricted as to a class of jobs or
broad range of jobs in various classes.").  The EEOC's regulations
define a "class of jobs" as "[t]he job from which the individual
has been disqualified because of an impairment, and the number and
types of jobs utilizing similar training, knowledge, skills or
abilities, within that geographical area, from which the individual
is also disqualified because of the impairment." 29 C.F.R. §
1630.2(j)(3)(ii)(B).  A "broad range of jobs" is defined as "[t]he
job from which the individual has been disqualified because of an
impairment, and the number and types of other jobs not utilizing
similar training, knowledge, skills or abilities, within that
geographical area, from which the individual is also disqualified
because of the impairment."  Id. § 630.2(j)(3)(ii)(C).

     To survive summary judgment here, plaintiff must present some
evidence that Goodyear believed that he was "significantly
restricted in the ability to perform either a class of jobs or a
broad range of jobs in various classes as compared to the average

                               16

person having comparable training, skills, and abilities."
Heartway Corp., 466 F.3d at 1162 (quoting 29 C.F.R. 1630.2
(j)(3)(I)).  The Tenth Circuit has explained the burden on the
plaintiff as follows:

> It is particularly difficult for a plaintiff to prevail
> on this type of claim, which takes a plaintiff to the
> farthest reaches of the ADA.  It is not, however, an
> insurmountable showing.

Justice, 527 F.3d at 1087 (brackets and internal quotation marks
omitted).

V.

Goodyear initially argues that plaintiff has not demonstrated
that he was regarded as a disabled person within the definition of
the ADA.  Goodyear asserts that plaintiff is unable to show that it
regarded him as having an impairment substantially limiting his
ability to perform a broad range of jobs, rather than a single
position.  Goodyear points out that, although plaintiff had been
hired, he had not been assigned a specific job.

Plaintiff counters this contention by pointing out that
Goodyear terminated him before he was assigned to a particular
position.  He suggests that this is evidence that Goodyear regarded
him as unable to do any job in the plant.  He argues that Goodyear
regarded him as disabled based upon the following:  (1) Nace and
Hollis were aware that he had received past workers' compensation
permanency ratings regarding his knee and head; (2) Nace and Hollis
were both concerned with the permanency ratings and suggested that

17

the ratings meant that plaintiff was disabled; and (3) neither Nace nor Hollis consulted the examining physician, Dr. Davies, regarding Dr. Davis' examination of plaintiff.

The court begins by noting that the focus here must be on the statements made by Hollis, who made the decision to terminate Williams.  The views of only the decision maker are considered in determining whether the employer regarded the employee as disabled for the purposes of the ADA.  <u>Rakity</u>, 302 F.3d at 1163.  Thus, the court shall not consider any statements made by Nace or any other Goodyear employees other than Hollis during the employment process. Even if we were to consider the statements made by Nace, we are not persuaded that they do not provide sufficient support for Williams' claim.

In evaluating the evidence in the record, the court finds no evidence to support plaintiff's contention that Goodyear mistakenly believed that he had an impairment which substantially limited the major life activity of working.  Williams cannot point to any statements made by Hollis that indicated that he considered Williams disabled.  The only evidence offered by Williams to support his claim is that (1) Goodyear received his workers' compensation records which showed two instances where he had received permanent disability impairments; and (2) Goodyear terminated him shortly after receiving these records.  The court is not persuaded that this evidence is sufficient to demonstrate a

"regarded as" claim under the ADA.   "[T]he mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action."  <u>Kelly v. Drexel Univ.</u>, 94 F.3d 102, 109 (3rd Cir. 1996); <u>see also</u> <u>Baffoe v. W.H. Stewart Co.</u>, 211 F.3d 1277, 2000 WL 484879 at * 6 (10th Cir. 2000) ("[I]t was not enough for Baffoe to present evidence that his workers' compensation records used the word 'disabled' or that they provided him with a permanent disability rating.  Nor was it sufficient for Baffoe to show that W.H. Stewart employees referred to him as disabled or at risk for injury."). The record shows only that Goodyear examined Williams' employment application and medical questionnaire and determined that he had made intentional omissions and misrepresentations.  During the employment process, plaintiff plainly failed to answer completely or truthfully on the following matters:  (1) all of his prior employers including Suhler Trucking and others on his employment application; (2) whether he had ever had a knee injury on the medical questionnaire; (3) the year he suffered a head injury at Ranger Trucking on his medical questionnaire; and (4) telling Nace that his knee injury was not work-related.  Plaintiff has offered explanations for some of these misrepresentations and omissions, but the facts are uncontroverted on these matters.  In each instance, Goodyear employees could properly determine that Williams

had failed to provide true and complete information.   The records that Goodyear had obtained concerning Williams' workers' compensation history showed that all of these matters had not been fully and truthfully answered by Williams.   This evidence suggests that Goodyear did not question Williams' ability to work, only his ability to tell the truth.

There is no evidence to show that Hollis ever considered whether Williams was disabled.   There is no evidence that Hollis or any other employee at Goodyear terminated Williams' employment because of unsubstantiated speculation about the future risks from a perceived disability.   See, e.g., Coleman v. Blue Cross Blue Shield of Kan., 487 F.Supp.2d 1225, 1252 (D.Kan. 2007) (knowledge of plaintiff's impairments alone by the employer is insufficient to avoid summary judgment, rather plaintiff must "go one step further and show that [the employer] had misperceptions about plaintiff's impairments"), aff'd, 287 Fed.Appx. 631 (10th Cir. 2008).   The lack of such evidence requires that summary judgment be entered for Goodyear.   See Lusk v. Ryder Integrated Logistics, 238 F.3d 1237, 1242 (10th Cir. 2001) (employer entitled to summary judgment where there is absence of evidence that employer misperceived extent of plaintiff's limitation).   As noted in the aforementioned Tenth Circuit precedent, it is difficult for a plaintiff to demonstrate evidence in support of a "regarded as" claim.   To prevail, a plaintiff must show that the employer *subjectively* believed the

20

employee to be significantly restricted as to a class of jobs or broad range of jobs in various classes.  See Heartway Corp., 466 F.3d at 1163.  The Tenth Circuit has noted that "[t]here will often not be evidence on this point," id., and this is such a case.  This case differs from those cases where the courts found that such evidence is present.  See, e.g., Heartway Corp., 466 F.3d at 1165 (issue for jury in a "regarded as" ADA claim where employer's decision maker made statements that plaintiff's Hepatitus C was the reason for firing plaintiff); Garrison v. Baker Hughes Oilfield Operations, Inc., 287 F.3d 955, 960 (10th Cir. 2002) (evidence was sufficient for a jury to determine "as regarded" claim where job offer was withdrawn after Human Resources Director learned that plaintiff had received workers' compensation in the past and told plaintiff offer was revoked because of risk of "possible future injuries," and because "we don't do that"); Tate v. Farmland Industries, Inc., 268 F.3d at 989, 1000 (10th Cir. 2001) (finding a genuine issue of material fact as to whether Farmland regarded Tate as significantly restricted in his ability to perform his job because "Farmland's manager . . . stated . . . that he believed it would have been unsafe for Tate to drive one of [the company] trucks").  Accordingly, the court finds that Goodyear is entitled to summary judgment because Williams has failed to establish a prima facie case of regarded as discrimination under the ADA.

Even if the court were to conclude that Williams had made a

prima facie case, we would still find that Goodyear is entitled to summary judgment.  Because Williams lacks direct evidence of disability discrimination, his ADA claim is properly analyzed under the burden-shifting framework described in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-04, (1973).  <u>See</u> <u>Carter v. Pathfinder Energy Services, Inc.</u>, ____ F.3d _____, 2011 WL 5222882 at * 13 (10th Cir. 11/3/2011).   Under this scheme, if the plaintiff establishes a prima face case, then the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its action.  <u>Id</u>. at * 12.   At the final stage, the plaintiff must prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.  <u>Id</u>.  To do so, the plaintiff is required to produce evidence that the defendant's non-discriminatory reason is "unworthy of belief."  <u>Randle v. City of Aurora</u>, 69 F.3d 441, 451 (10th Cir. 1995).  This burden can be met with "evidence of such weaknesses, implausibilities, incon-sistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."  <u>Argo v. Blue Cross & Blue Shield of Kan., Inc.</u>, 452 F.3d 1193, 1203 (10th Cir. 2006) (quotation omitted).  The court examines "the facts as they appear to the person making the decision to terminate plaintiff."  <u>Kendrick v. Penske Transp. Servs., Inc.</u>, 220 F.3d

1220, 1231 (10th Cir. 2000).

Goodyear has offered a legitimate, non-discriminatory reason for terminating Williams, i.e., his intentional omissions and misrepresentations on his employment application and medical questionnaire.  Williams points to two matters that he contends show pretext by Goodyear.  First, he argues that there is evidence showing that Goodyear has never terminated anyone for providing false information on his employment application.  Second, he notes the temporal proximity of Goodyear's receipt of the information in the workers' compensation records and the decision to terminate him.

The court is not persuaded that either of these matters present sufficient evidence of pretext by Goodyear.  Williams has not presented adequate evidence to support his contention that Goodyear had never terminated anyone for providing false information on the application.  Rather, Williams points only to the deposition testimony of Hollis who did indicate that he had never terminated anyone for this reason.  Williams, however, fails to note that Hollis had been in his job for only about six months prior to the Williams' termination.  Such evidence is simply inadequate to demonstrate pretext.  The record fails to contain any additional evidence on how often Goodyear had terminated employees for lying on their employment applications or medical questionnaires.  Goodyear had certainly made clear in its

application that false answers would lead to termination of employment.

Finally, the court finds no support for Williams' contention concerning temporal proximity. The timing of the termination actually appears to support Goodyear's position since Williams was fired shortly after Goodyear's investigation into the statements on his application and medical questionnaire. Nevertheless, the Tenth Circuit has consistently held that "temporal proximity alone is not sufficient to defeat summary judgment by showing that the employer's proffered reason is actually pretext for [discrimination]." Pinkerton v. Colo. Dep't of Transp., 563 F.3d 1052, 1066 (10th Cir. 2009) (citation omitted); see also Medina v. Income Support Div., New Mexico, 413 F.3d 1131, 1138 (10th Cir. 2005) ("No reasonable jury could conclude that a five-week span of time . . . without more, meets this standard."). Thus, the evidence does not reasonably support a conclusion that Goodyear's proffered reason for terminating Williams was pretextual and, therefore, Goodyear is entitled to summary judgment on Williams' ADA claim.

VI.

Finally, the court shall consider Williams' supplemental state law claim against the defendant. With the dismissal of Williams' ADA claim against Goodyear, the court shall decline to exercise supplemental jurisdiction over Williams' state retaliatory

24

discharge claim.  <u>See</u> 28 U.S.C. § 1367(c); <u>Smith v. City of Enid</u>, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").

**IT IS THEREFORE ORDERED** that defendant's motion for summary judgment (Doc. # 69) be hereby granted.  The court shall grant summary judgment to the defendant and against the plaintiff on plaintiff's claim under the Americans with Disabilities Act.  The court shall decline to exercise supplemental jurisdiction over plaintiff's state law claim.

**IT IS SO ORDERED.**

Dated this 7th day of December, 2011 at Topeka, Kansas.

s/Richard D. Rogers
United States District Judge